UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| CATHERINE NICHOLS,<br><br>　　　Plaintiff<br><br>v.<br><br>CREDIT UNION ONE and EXPERIAN INFORMATION SOLUTIONS, INC.,<br><br>　　　Defendants | Case No.: 2:17-cv-02337-APG-EJY<br><br>**Order (1) Granting Experian's Motion for Summary Judgment, (2) Denying Nichols' Motion for Summary Judgment, (3) Denying Nichols' Motion for Rule 56(d) Relief, and (4) Denying Motion to Strike as Moot**<br><br>[ECF Nos. 122, 126, 141] |

Plaintiff Catherine Nichols sues defendant Experian Information Solutions, Inc. for alleged violations of the Fair Credit Reporting Act (FCRA). First, Nichols alleges Experian violated 15 U.S.C. §§ 1681i(a) and 1681e(b) because it (1) failed to conduct a reasonable reinvestigation after Nichols disputed the accuracy of information in her credit report related to her account with Credit Union 1 and (2) failed to employ reasonable reinvestigation procedures, resulting in Experian's continued reporting of inaccurate information.[1] Second, Nichols alleges Experian violated § 1681g because it reported the results of its reinvestigation in a manner that was misleading and confusing. Finally, Nichols alleges Experian violated §§ 1681b(f) and 1681e(a) by failing to follow reasonable policies and procedures to ensure that consumer reports are not furnished to persons without a permissible purpose under FCRA.[2] This allegation is related to Experian allowing Credit Union 1 to access a report showing how Experian was reporting the Credit Union 1 account after Nichols filed suit against Credit Union 1.

---

[1] Nichols and Credit Union 1 settled their dispute. ECF No. 135.

[2] Nichols asserts this last claim on behalf of herself and a proposed class, but she never moved for class certification.

Nichols moves for partial summary judgment on her fourth claim, arguing that no genuine dispute remains that Experian violated § 1681e(a) by failing to maintain reasonable procedures to ensure consumer reports are furnished only for permissible purposes. Experian opposes Nichols' motion and moves for summary judgment on all of Nichols' claims. Nichols moves to strike a declaration attached to Experian's motion and requests relief under Federal Rule of Civil Procedure 56(d).

For the reasons explained in this order, I grant Experian's motion for summary judgment and deny Nichols' motion for summary judgment. I deny Nichols' motion for Rule 56(d) relief. Finally, I deny as moot Nichols' motion to strike.

## I. BACKGROUND

In June 2013, Nichols filed for bankruptcy. ECF No. 122-3. She listed in her bankruptcy schedules as an unsecured nonpriority claim an account identified as "Credit Union One A D" with a balance of $1,225. *Id.* at 23. In September 2013, Nichols was granted a discharge in the bankruptcy proceeding. ECF No. 122-4.

Experian is a consumer reporting agency (CRA) as defined by the FCRA. 15 U.S.C. § 1681a(f). CRAs receive credit information about borrowers and consumers from data furnishers, such as mortgage lenders and credit card companies. In October 2014, January 2015, and September 2015, Experian sent Nichols consumer file disclosures that listed the Credit Union 1 tradeline.[3] ECF Nos. 126-3 at 24; 126-4 at 12, 35. The disclosures identified the furnisher of the information as Credit Union One A D. *Id.* The terms and monthly payment were listed as "[n]ot reported." *Id.* The disclosures stated the account's status as discharged in

---

[3] Tradeline refers to information such as the account number, status, and balance that furnishers of information provide to CRAs like Experian. ECF No. 122-24 at 4.

bankruptcy and the account history as the debt being included in a Chapter 7 bankruptcy on September 16, 2013. *Id.* The payment history showed the code "CO" for "charged off" for the months of November and December 2010. ECF Nos. 126-3 at 25; 126-4 at 13, 35.

On May 24, 2016, Nichols sent a dispute letter to Experian. ECF No. 126-4 at 51. As relevant here, she stated in her letter that Experian was reporting the account as having a status of "Derogatory and Collection/Charge-Off." *Id.* at 52. She disputed that the Credit Union 1 account should be reported this way because she "performed all obligations required during Bankruptcy and obtained a discharge." *Id.* at 52-53. She thus requested that the status state that it was discharged in bankruptcy with "no other adverse notations." *Id.* at 53. She requested that Experian include a statement that she disputed the information if Experian would not make the requested change. *Id.* Nichols attached to her dispute letter a printout that appears to be from Trans Union, which includes language regarding "Derogatory and Collection/Charge-Off" that she cites in her letter. *Id.* at 54-71 (page 57 shows the "Credit Un 1" tradeline).

When a consumer disputes information in her credit report, Experian sends an Automated Consumer Dispute Verification (ACDV) form to the data furnisher, unless it can resolve the dispute internally. ECF No. 122-11 at 5-6. Upon receiving an ACDV, the furnisher must review and respond with any recommended changes. *Id.* In response to Nichols' dispute letter, Experian sent an ACDV to Credit Union 1. *Id.* at 79. Credit Union 1 responded by indicating the "[a]ccount information [was] accurate as of date reported." *Id.* Experian reported to Nichols the results of its reinvestigation as "[r]emains." *Id.* at 84. It added a note to the comment section of the Credit Union 1 tradeline to state that "[t]his item remains unchanged from our processing of your dispute in June 2016." *Id.* at 86. Under account history, Experian noted that the debt was

included in bankruptcy on June 12, 2013. *Id.* It no longer referred to the September 2013 discharge date, but the status section showed the debt was discharged through bankruptcy. *Id.*

Nichols sued Credit Union 1 on September 6, 2017, and filed an amended complaint on December 19, 2017. ECF Nos. 1, 8. Two days later, Experian provided to Credit Union 1 a "Bullseye" report on Nichols. ECF Nos. 122-5; 122-18 at 6. According to Experian's product sheet, a Bullseye report is an accuracy verification tool that allows a furnisher of information to determine how Experian is currently reporting the furnisher's account information. ECF Nos. 122-6; 122-10. Experian's "[b]uilt-in security feature guarantees" that a furnisher "can access only [its] own tradelines" through a Bullseye report. *Id.* Credit Union 1 requested the Bullseye to see how Experian was reporting its tradeline because Nichols had sued it. ECF No. 122-21 at 22. Based on these facts, Nichols amended her complaint to include claims against Experian. The parties now move for summary judgment.

## II. LEGAL STANDARD

Summary judgment is appropriate if the movant shows "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a), (c). A fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the non-moving party to set forth specific facts demonstrating there is a genuine issue of material fact for trial. *Sonner v. Schwabe N. Am., Inc.*, 911 F.3d 989, 992 (9th

Cir. 2018) ("To defeat summary judgment, the nonmoving party must produce evidence of a genuine dispute of material fact that could satisfy its burden at trial."). I view the evidence and reasonable inferences in the light most favorable to the non-moving party. *Zetwick v. Cnty. of Yolo*, 850 F.3d 436, 440-41 (9th Cir. 2017).

**III. ANALYSIS**

    **A. Sections 1681i and 1681e(b)**

Nichols alleges Experian failed to conduct a reasonable reinvestigation because it continued to report multiple charge-offs in her credit report in November and December 2010. ECF No. 35 at 5. She contends this is inaccurate because Credit Union 1 could report a charge-off only once. *Id.* Nichols also alleges that Experian incorrectly identified Credit Union 1 as Credit Union One A D. *Id.* She contends that because Experian failed to conduct a reasonable reinvestigation, it continued to report inaccurate information in violation of § 1681e(b). She seeks actual and statutory damages for these alleged violations. *Id.* at 28.

Experian moves for summary judgment on this claim, arguing that there is no evidence that its reporting was inaccurate or misleading. It contends it accurately reported that Nichols' account was charged off in November and December 2010, and that no creditor would be misled by two charge-offs. Experian also argues Nichols' § 1681i reinvestigation claim fails because she never advised Experian in her dispute letter that she was challenging the multiple charge-offs. Finally, Experian argues it conducted a reasonable reinvestigation by asking Credit Union 1 to verify the data, Nichols cannot base her reinvestigation claim on a consumer disclosure (as opposed to a consumer report), and she cannot establish Experian's reinvestigation procedures were unreasonable. Nichols does not specifically respond to Experian's motion with respect to

these claims, although she argues in relation to her § 1681g claim that the multiple charge-offs were inaccurate or misleading.

Section 1681e of FCRA outlines CRA compliance procedures, and requires that "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." To bring a claim under this provision, "a consumer must present evidence tending to show that a credit reporting agency prepared a report containing inaccurate information." *Guimond v. Trans Union Credit Info. Co.*, 45 F.3d 1329, 1333 (9th Cir. 1995).

If a consumer disputes the accuracy of information in her file, § 1681i requires the CRA to "conduct a free and reasonable investigation within thirty days of a consumer informing the CRA of disputed information." *Shaw v. Experian Info. Sols., Inc.*, No. 16-56587, 2018 WL 2424105, at *4 (9th Cir. May 29, 2018). To bring a claim under § 1681i, an actual inaccuracy must exist. *Id.* "Thus, to sustain either a § 1681e or a § 1681i claim, a consumer must first make a prima facie showing of inaccurate reporting." *Id.* at *5 (quotations omitted). Reporting can be inaccurate if it is patently incorrect or "misleading in such a way and to such an extent that it can be expected to adversely affect credit decisions." *Id.* (quotation omitted).

Nichols has not presented evidence to show that Experian reporting Credit Union 1's name as Credit Union One A D was patently incorrect or misleading in a way that can be expected to adversely affect credit decisions. In her own bankruptcy petition, Nichols identified Credit Union 1 as Credit Union One A D. And when Experian sent the ACDV, Credit Union 1 did not note its name as incorrect. Nor has Nichols presented any evidence that the slight name differences would mislead in a way that would adversely affect credit decisions.

As for the charge-offs in November and December 2010, Nichols did not identify this as an inaccuracy in her dispute letter. ECF No. 126-4 at 52-53. Experian thus had no duty to reinvestigate this alleged inaccuracy. 15 U.S.C. § 1681i(a)(1)(A). There is no evidence that reporting charge-offs on a single tradeline in consecutive months would be "misleading in such a way and to such an extent that it can be expected to adversely affect credit decisions." *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 890 (9th Cir. 2010) (quotation omitted).[4] Finally, even if the name or multiple charge-offs were inaccurate or misleading, Nichols presents no evidence that Experian's procedures or its reinvestigation were not reasonable. I therefore grant Experian's motion for summary judgment on Nichols' claims under §§ 1681i and 1681e(b).

**B. Section 1681g**

Nichols alleges Experian violated § 1681g by changing the name of the furnisher of information from Credit Union 1 to Credit Union One A D, continuing to report multiple charge-offs, and changing the monthly payment and loan terms from $0 to "not reported." ECF No. 35 at 5. Experian moves for summary judgment on this claim, arguing there is no evidence that Experian reported her Credit Union 1 account in a manner that was so confusing that she could not evaluate the information's accuracy. Rather, Experian contends, Nichols is attempting to show Experian's reporting was confusing because it was different from a Trans Union document that purported to state how Experian was reporting the account. Experian notes that it referred to Credit Union One A D on each consumer disclosure, and those references match the name of the

---

[4] *See also Steinmetz v. Am. Honda Fin.*, 447 F. Supp. 3d 994, 1006-07 (D. Nev. 2020); *Cardinali v. Plusfour, Inc.*, No. 2:16-cv-02046-JAD-NJK, 2019 WL 4723071, at *11 (D. Nev. Sept. 26, 2019) (finding no evidence that multiple charge-offs were misleading); *Steinmetz v. Am. Honda Fin.*, No. 2:19-cv-00064-JCM-VCF, 2019 WL 4415090, at *5 (D. Nev. Sept. 16, 2019) (holding the plaintiff had not plausibly alleged "how reporting charge-offs on a single tradeline in consecutive months would be misleading in such a way and to such an extent that it can be expected to adversely affect credit decisions." (quotation omitted)).

7

creditor in Nichols' own bankruptcy petition. Experian also contends that it never changed how it reported the terms and monthly payment fields, and that it listed them as "not reported" because it was a revolving line of credit with no set terms. Experian also argues this claim is untimely.

Nichols responds that a consumer disclosure is a consumer report. She also contends the disclosure was inaccurate because an account can be charged-off only once. She further contends the "not reported" notation in the monthly payment and terms sections was misleading "in contrast to the $0 monthly payment and term of 0 months that [Experian] reported previously" because Experian had information about the tradeline that it was not reporting. Finally, she contends Experian misled her by stating her report remained the same after the reinvestigation even though it changed the account to show a $0 balance as of June 2016, which was almost three years after her bankruptcy discharge. She contends her claim cannot be time-barred because she filed suit within two years of receiving the results of Experian's reinvestigation.

Section 1681g(a) requires Experian to "clearly and accurately" disclose "[a]ll information in the consumer's file" when a consumer requests her report. A CRA "must do more than simply make an accurate disclosure of the information in the consumer's credit file." *Gillespie v. Equifax Info. Servs., L.L.C.*, 484 F.3d 938, 941 (7th Cir. 2007). The disclosure must be "sufficient to allow the consumer to compare the disclosed information from the credit file against the consumer's personal information in order to allow the consumer to determine the accuracy of the information set forth in her credit file." *Id.*; *see also Shaw v. Experian Info. Sols., Inc.*, 891 F.3d 749, 759 (9th Cir. 2018) (stating the disclosure must be "understandable to the average consumer").

No genuine dispute remains that Experian clearly and accurately disclosed the information contained in Nichols' file and did so in a way that allowed Nichols to compare Experian's reporting with her own records. Section 1681g does not require that the disclosures be factually accurate. Rather, it requires Experian to accurately report what is in Nichols' file so she can determine and dispute factual inaccuracies. *See Ramirez v. TransUnion LLC*, 951 F.3d 1008, 1029 (9th Cir. 2020) (stating § 1681g serves to "protect consumers' interests in having access to the information in their credit reports upon request and understanding how to correct inaccurate information in their credit reports upon receipt"). There is no evidence that Experian did not accurately disclose to Nichols how it was reporting the charge-offs.

Nichols' argument that the "not reported" notation in the monthly payment and terms sections was misleading is based on its inconsistency with the Trans Union document. That does not show that Experian's disclosure was misleading or confusing. There is no evidence that Experian is responsible for the information in the Trans Union document. Experian is not liable under § 1681g(a) because a consumer is confused by a document prepared by someone else. Experian's own disclosures consistently reported the terms and monthly payment as "not reported."

Finally, Nichols does not explain what is misleading or confusing about reporting a $0 balance in June 2016. There is no evidence that the balance was anything other than $0 at that time. The comment section notes that the account was closed, and the status and account history sections state the debt was discharged in bankruptcy. I therefore grant Experian's motion for summary judgment on Nichols' § 1681g claim.

////

////

### C. Sections 1681b(f) and 1681e(a)

Nichols alleges Experian failed to establish or follow reasonable procedures to ensure it produces a consumer report only for a permissible purpose under FCRA because Experian did not require Credit Union 1 to identify the permissible purpose for its request for Nichols' information after she sued Credit Union 1. Nichols contends there is no permissible purpose for a creditor like Credit Union 1 to obtain her consumer data after her relationship with Credit Union 1 was terminated through her bankruptcy discharge. ECF No. 35 at 13, 17.

Nichols alleges Experian's automated systems could be configured to flag instances where a consumer's account with a particular furnisher of information was closed (such as through bankruptcy discharge, which Experian monitors), so that Experian could determine whether that furnisher has a permissible purpose in seeking consumer information in light of the closed status of the account. *Id.* at 14. But she contends Experian allowed Credit Union 1 to access a "Bullseye" report on her without requiring Credit Union 1 to identify a permissible purpose. *Id.* at 19. Nichols alleges that Credit Union 1 requested the Bullseye for litigation, which is not a permissible purpose. *Id.* at 20. Nichols alleges these violations were willful, so she is entitled to statutory damages. *Id.* at 15.

Experian moves for summary judgment on this claim, arguing that a Bullseye is not a consumer report to which the permissible purpose requirement applies because it is not used to evaluate the consumer's eligibility for credit, insurance, or employment and because it is specifically excluded from the definition of a consumer report as a report containing only information about the Credit Union 1 tradeline with Nichols. Experian further contends that Credit Union 1 had a permissible purpose under FCRA because it could conduct an account review even though Nichols' account was discharged in bankruptcy and closed. Experian argues

that even if its interpretation of FCRA is incorrect in this regard, there is no evidence of willfulness because courts have likewise concluded that Bullseyes are not consumer reports. And Experian contends Nichols did not request actual damages for this claim, but even if she did, there is no evidence of damages related to the post-litigation Bullseye report.

Nichols argues that a Bullseye is a consumer report because it consists of information that was collected for the purpose of making credit decisions, even if the entity requesting the Bullseye is not using it for that purpose at the time of the request. Nichols also argues that a Bullseye is not excluded from the definition of a consumer report. She contends there is no dispute the Bullseye was procured for litigation, and that is not a permissible purpose under FCRA. She further contends Experian had no reasonable procedures in place to prevent Credit Union 1 from procuring the Bullseye without a permissible purpose even though Experian could have used its own information to create reasonable procedures. Nichols also argues Experian's conduct was willful because the statutory text and relevant case law put Experian on clear notice of its obligations.

Section 1681b(f)(1) prohibits a person from using or obtaining a consumer report for any purpose unless "the consumer report is obtained for a purpose for which the consumer report is authorized to be furnished under this section." Section 1681e(a) requires CRAs to "maintain reasonable procedures designed . . . to limit the furnishing of consumer reports to the purposes listed under section 1681b of this title." "These procedures shall require that prospective users of the information identify themselves, certify the purposes for which the information is sought, and certify that the information will be used for no other purpose." *Id.*

These requirements apply when a CRA is disclosing a "consumer report." FCRA defines a consumer report as:

> any written, oral, or other communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for--
> (A) credit or insurance to be used primarily for personal, family, or household purposes;
> (B) employment purposes; or
> (C) any other purpose authorized under section 1681b of this title.

15 U.S.C. § 1681a(d)(1). Section 1681a(d)(2)(A)(i) excludes from the term "consumer report" "any . . . report containing information solely as to transactions or experiences between the consumer and the person making the report."

I need not resolve whether a Bullseye is a consumer report. Even assuming it is,[5] and even though Experian has not presented evidence that it has any procedures to ensure a furnisher has a permissible purpose when obtaining a Bullseye, no genuine dispute remains that Credit Union 1 had a permissible purpose. So the disclosure and the lack of reasonable procedures caused no harm to Nichols. Among FCRA's permissible purposes is to conduct an account review. 15 U.S.C. § 1681b(a)(3)(A) (allowing disclosure to "a person which [the CRA] has reason to believe . . . intends to use the information in connection with a credit transaction involving the consumer on whom the information is to be furnished and involving the extension of credit to, or review or collection of an account of, the consumer"). Credit Union 1's certification to Experian about its permissible purposes for obtaining a consumer report includes conducting an account review. ECF No. 123-5 at 8. Nothing in FCRA limits an account review to open accounts or precludes an account review for an account that was discharged in

---

[5] Experian cites to two other cases where I have addressed whether Bullseyes are consumer reports under FCRA. *See Steinmetz*, 447 F. Supp. 3d at 1011-12; *Woodward v. Equifax Info. Servs., LLC*, No. 2:19-cv-00019-APG-DJA, 2020 WL 1450580, at *3 (D. Nev. Mar. 25, 2020). Those cases were not brought under §§ 1681b(f) and 1681e(a), did not make the same arguments or cite the same case law, and were at the dismissal stage as opposed to summary judgment.

bankruptcy. *See Vanamann v. Nationstar Mortg., LLC*, 735 F. App'x 260, 261-62 (9th Cir. 2018), *reh'g denied* (July 13, 2018) (concluding a furnisher did not willfully violate FCRA because the "plain text of the Act does not prohibit a mortgage servicer from obtaining a consumer's credit report after a bankruptcy court's discharge of the consumer's mortgage debt" and "the Act does not require that a consumer have personal liability on a debt in order for a credit check to be authorized").[6] Allowing account review under these circumstances is consistent with the furnisher's duty to ensure it is accurately reporting information to the CRA even after the account is closed or discharged in bankruptcy. *See* 15 U.S.C. §§ 1681c(a) (allowing a CRA to report bankruptcy information for up to ten years and accounts charged off or placed for collection for seven years), 1681s-2(a)(2) (requiring a furnisher to correct or add incomplete or inaccurate information).

      Because Credit Union 1 had a permissible purpose to obtain the Bullseye, it would have obtained the Bullseye even if Experian had instituted reasonable procedures to ensure that a Bullseye is pulled only with a permissible purpose. Consequently, under the circumstances of this case, neither the disclosure nor the lack of reasonable procedures caused Nichols harm.

      To the extent Nichols could still recover statutory damages for a willful violation, no reasonable jury could find a willful violation. A plaintiff may recover statutory and punitive damages if she can show the CRA "willfully" violated the Act. 15 U.S.C. § 1681n(a). To establish a willful violation, Nichols must show Experian engaged in conduct "known to violate

---

[6] *See also Levine v. World Fin. Network Nat. Bank*, 554 F.3d 1314, 1318-1319 (11th Cir. 2009) (concluding that a CRA did not willfully violate the FCRA when it sold a consumer report to a creditor for account review after the consumer had closed his account with the creditor because FCRA does not distinguish between closed and open accounts); *Banga v. First USA, NA*, 29 F. Supp. 3d 1270, 1278-79 (N.D. Cal. 2014) ("The plain language of the FCRA does not prohibit a creditor such as Chase from obtaining a credit report for the purpose of reviewing a closed credit card account.").

13

the Act" or acted in "reckless disregard of [a] statutory duty." *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 56-57, 69 (2007). "A defendant acts in reckless disregard when its action both is a violation under a reasonable reading of the statute's terms and shows that the company ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless." *Shaw v. Experian Info. Sols., Inc.*, 891 F.3d 749, 760 (9th Cir. 2018) (quotation omitted).

The statutory definition of a consumer report is not a model of clarity. Moreover, excluded from that definition is information that a furnisher provides to a CRA "containing information solely as to transactions or experiences between the consumer and the [furnisher]." 15 U.S.C. § 1681a(d)(2)(A)(i); *see also Hodge v. Texaco, Inc.*, 975 F.2d 1093, 1096 (5th Cir. 1992) (stating that the "'transactions and experiences' provision exempts from coverage any report based on the reporter's first-hand experience of the subject," so "a bank's report of its own experience with its customers . . . would not constitute a 'consumer report'" (citing 16 C.F.R. Appendix, Part 600, at 344 (1991)). CRAs must advise furnishers of any changes to their tradelines, and the furnisher has a continuing duty to update or correct its reporting. 15 U.S.C. § 1681i(a)(5)(A) (instructing CRAs to "promptly notify the furnisher" where the CRA has "modified or deleted" information in the consumer's file based on a consumer dispute). Thus, when a furnisher obtains a Bullseye, it is obtaining information it has already obtained through either its own records or through updates from Experian. It is not objectively unreasonable for a CRA to interpret these statutory provisions to mean that when the CRA tells the furnisher how it is reporting that furnisher's tradeline, that does not constitute a "consumer report." There is no case stating that a Bullseye is a consumer report, and some courts have concluded, based on the arguments, allegations, and evidence before them, that it is not. *See, e.g.*, *Steinmetz*, 447 F. Supp.

3d at 1011; *Woodward v. Equifax Info. Servs., LLC*, No. 2:19-cv-00019-APG-DJA, 2020 WL 1450580, at *3 (D. Nev. Mar. 25, 2020); *Diaz v. Chase*, 416 F. Supp. 3d 1090, 1096 (D. Nev. 2019); *Hanks v. Talbots Classics Nat'l Bank*, No. 12-cv-2612, 2012 WL 3236323 at *7 (N.D. Cal. Aug. 6, 2012) (stating the FCRA "contains no . . . limitations with respect to a creditor accessing its own trade line information, which on its own does not constitute a consumer credit report"). I therefore grant Experian's motion for summary judgment and deny Nichols' motion for summary judgment on this claim.

### D. Rule 56(d) Motion and Motion to Strike

I deny Nichols' request for Rule 56(d) relief because none of the requested discovery would change the result in this case. I deny as moot Nichols' motion to strike because I have not cited to or relied on the declaration that Nichols seeks to strike.

## IV. CONCLUSION

I THEREFORE ORDER that plaintiff Catherine Nichols' motion for summary judgment **(ECF No. 122) is DENIED**.

I FURTHER ORDER that defendant Experian Information Solutions, Inc.'s motion for summary judgment **(ECF No. 126) is GRANTED**.

I FURTHER ORDER that plaintiff Catherine Nichols' motion to strike **(ECF No. 141) is DENIED as moot**.

I FURTHER ORDER the clerk of court to enter judgment in favor of defendant Experian Information Solutions, Inc. and against plaintiff Catherine Nichols.

DATED this 30th day of September, 2020.

ANDREW P. GORDON
UNITED STATES DISTRICT JUDGE